Mr. Bragalone, am I pronouncing it correctly? Bragalone, Your Honor. Bragalone. Okay. You may proceed. I'm sure you've got many puns on your name. Yes, Your Honor. I have in the past. Thank you. May it please the Court. There are multiple errors in the District Court's determination below that require reversal. First, the District Court incorrectly focused on the contents of a database in construing the method claims of Claim 10 and 11 of the 112th Act. And in so doing, the Court found that the accused devices could only use a database that was comprised entirely of syllabic elements. And by doing that, the Court erred in extending limitations of the claim well beyond the claim. In the accused device, what we have is a situation where there's some individual words that consist of one syllable, right? Yes, Your Honor. Okay. And also that there are some suffixes and prefixes also, or just suffixes? Yes, Your Honor. We found both suffixes and prefixes and pointed those out to the District Court. Okay. But the vast majority of the database is whole words? Yes, Your Honor. They have whole words. However, the evidence that we submitted to the District Court was that, first of all, these were not complete word databases. On that basis alone, this Court should reverse because of the dispute in the facts below. What were they if they weren't complete words? Your Honor, they included, for example, parts of words such as D-E, E-R, and E-S. These databases actually store mix and E-S, not mixes. They store tax plus E-S, not taxes. And in that manner, they actually perform the method of the claim. That's the prefixes and suffixes part. Yes, Your Honor. But in addition, the complete words, as we demonstrated, not only did Motorola's documents show how you could take complete words such as park and ball and then combine them to form a new word that was not in the database, such as ballpark. But the Motorola representatives actually demonstrated in their depositions how one would accomplish this with the accused of ISIS. But they also include words that are multi-syllabic? Yes, Your Honor. They do include multi-syllable words. And we find error with that limitation in the District Court's determination as well. As the examiner found in the re-exam. But it sounds as though the real question is whether we should construe this database as having to be limited to monosyllabic entries or whether it can still infringe if it has multi-syllabic words in it, right? Yes, Your Honor. That certainly frames the question well. Where there's a one-syllable word. Yes, Your Honor. So something is both a word and a syllabic element. Do you claim that as protected by your invention if there's no combining function done on that word in that particular use? Yes, if that is capable of being combined. Because recall, even the District Court agreed that a syllabic element is a one, they say one syllable, but leaving aside whether it's one or multi, it's a word or a part of a word that is capable of being combined to form a new word that's not already available in the vocabulary. That's how you distinguish the prior art. That's exactly the distinguishment made. There was never any disclaimer or disavowal of a complete word database. But let me, I'm not sure I understand. If we accept the District Court's claim construction of syllabic element, what this claim has that the one in the case before you didn't have is the word each. Yes, Your Honor. So doesn't that fairly require that each and every one of these syllabic elements meet the test? And if they have some that do and some that don't because they're multiple syllable words, they don't infringe. Why am I wrong? Your Honor, that's incorrect because of the fundamental difference between a method claim, which is infringed each time the method is performed, and an apparatus claim, which would go to the contents of the database. In other words, every time there is a match to each word here, actually, the antecedent of that is one or more. And that was added by the examiner after allowing the claims over the Rabino reference. Wait, what are you referring to in the claim language? Yes, Your Honor. The claim language refers to each of the one or more. Right. For example, it says the match of the binary code must be to one or more prepurpose. And then it has a comma, and it says each preprogrammed code being representative of a syllabic element. That is merely saying that each of the preprogrammed codes that is matched, whether it's matching against one or whether it's matching against more than one, must be a syllabic element. And that is exactly what we contend, Your Honor. That's not saying that each of the entire... I don't understand what you're saying. You're saying that each does not modify the entire database. This claim does not require... What does it modify? It modifies the matched one or more preprogrammed codes. When you're performing... But that's the matched one or more preprogrammed codes is in the following passage. It's not in that passage. This passage starts off by talking about matching. Yes, Your Honor. And you're trying to read in what follows in terms of what says forming a representation from one or more syllabic elements represented by the matched one. To me, you're reading the each into the other one, but the each isn't found there. It's found in the previous provision. The district court error by actually reading the each in a completely different place. The district court said that each binary code had to be matched. In other words, each time text was input, that you always had to match against a syllabic element. It says each preprogrammed code being representative of a syllabic element. Yes, Your Honor. And that's the each of the matched preprogrammed codes. Where were you getting that? Your Honor. The next provision talks about forming a representation from one or more syllabic codes represented by the matched one or more... I mean, that comes later. I'm not seeing where you're getting at. Yes, Your Honor. And in construing this claim as a whole, preprogrammed codes is self-defined here as being representative of a syllabic element. And there is no dispute that each match to a syllabic element must be, or each match to a preprogrammed code must be to a syllabic element. There's no disagreement here. Where the court erred is that it said the entire database has to consist of only syllabic elements. There was never anything in the process... So your suggestion is that each time there's a match with a single syllabic element in the database, there is infringement, and that's all that the method requires. Exactly, Your Honor. And each time a method is performed, infringement happens. Now, there are many... Am I correct in reading what you're claiming this way, that when the binary code doesn't match with a preprogrammed syllabic element code, then there's no infringement, but there's only infringement when it does match, but that you didn't limit your claim to saying you don't have any claim for infringement when you have a database that has both preprogrammed codes and whole words? I think Your Honor put that very well. Finally figured it out. It took me a very long time. I'm sorry, go ahead. No, it's okay. I understand your argument, but I don't understand how your argument coincides with the language of the claim, because the provision that we're discussing talks about broadly matching said binary code with one or more preprogrammed codes. So we're talking about one or more. It covers the more, if there are more. And then it says each of those codes. So I read that as saying in the matching function, if you're matching several, then each of them has to consist of a syllabic element. That's right, Your Honor. If you match against two syllabic elements, in other words, if your input binary code happens to match against park and ball to make ballpark, then each of park and ball has to be a syllabic element. That's what the claim says, and that's how we construe it. Where the district court erred is it said if you input, for example, text that would equate to an alphanumeric string, if you input numbers, then you can't have numbers anywhere in the preprogrammed code database. The court said that the database had to consist entirely of only syllabic elements, but nothing in the prosecution history, and certainly not the claim language, compels that result. That would extend the limitations of the claim well beyond the claimed method. I'm sorry, go ahead. If a hypothetical device has a vocabulary of single syllable words, that would be infringing. Your Honor, only if it was capable of combining some of those single syllable words to create outputs that aren't already in the database. That was the critical distinction over Rabiner. In fact, the district court found that in its claim construction order. Could you repeat that again for me? Only if it was capable of... An entry is a syllabic element. Only if it's capable of being combined with something else to create a new output that's not already stored in the fixed database. And where are you getting that from? Aren't you redefining syllabic element? Doesn't that require redefining syllabic element from what the district court construed it as? No, actually, Your Honor, that was the district court's construction in its claim construction order. The district court found... The issue that we take with the district court is the fact that the district court added a one-syllable limitation. Where are you getting this in the prosecution history? I mean, the each language was included. It was distinguished over Rabiner. This was the purpose of adding the word each, correct? Right? No, Your Honor. Each was added by the examiner after allowing... Okay, but the examiner thought it was necessary to add that word, right? The examiner thought it was necessary for definiteness purposes. And if you look at the specific amendment made by the examiner, I think it becomes a little more clear. The claim actually said, a syllabic element combining said one or more syllabic elements to form the word. The examiner changed that after allowing the claims over Rabiner. After finding that they were allowable based upon the argument, the examiner changed said to each and changed a to one or more, which would indicate... For clarity. There can't be a match against one. Okay, so where is the capable distinction that you're making of Rabiner? Where does that appear in the prosecution history? That's in the statement that was made to distinguish over Rabiner where the applicant said specifically... Where are you? This is in the prosecution history, Your Honor. Yes, I understand. I'm sorry. And I'll find it here quickly. The statement that was made, in fact, this was the district court's holding, was that a syllabic element... Do you have an appendix? What page in the appendix? I don't have a page with me directly, Your Honor, for that exact page. Can somebody give you the page? Because it's important for us to be able to follow along. Yes, Your Honor. I believe it's page A6181. 6181? Or 6183. 6183. Yes, Your Honor. In that, the distinguishment that was made is that the Rabiner method only had... What language are you talking about? Your Honor, the language that was... Now, if you come here to argue, you need to be familiar with your own materials and be able to point it to us. We don't take you at your word necessarily. We need to see where it is. Yes, Judge Dyke. At A6182. 6182. And continuing on to 6183. And I'm into my rebuttal time. Well, that's okay. I'll address this, Your Honor. It says, in contrast to the Rabiner reference... Now, where is this on page 6182? Yes, Your Honor. Okay. In the middle of the page. In contrast. Yes, Your Honor. I'm not finding the reference here. Oh. Oh, in contra... Okay, I see where you are. Okay. Which are combined to form. And here's the combining. A word of standard English text giving an almost unlimited vocabulary. And the vocabulary, by the way, that's being addressed there is the output vocabulary. What can be formed by the combination of the syllabic elements. Then it goes on to say that... And I'm reading from the last line on this page. In such an approach, every possible choice, and this is in the Rabiner method, must be included in the vocabulary and a separate ASCII character string for every numeric string within the vocabulary must be included. Thus, in Rabiner, there is, and this is underlined to the examiner, a one-to-one correspondence between stored words and vocabulary size. It will be appreciated that either the word choice must be very limited or the vocabulary must be very large to encompass every possible choice. The memory requirements for such a system would be very limited. And then it goes on to contrast Claim 1, which was an apparatus claim. And it says that, in contrast, Claim 1, as amended, provides a structure and methodology for identifying the actual letters forming a letter group while removing the potential ambiguity arising from multiple letters on each touchstone key. But this is the passage where the prior art of Rabiner was distinguished. And I would point out that the district court actually adopted this in the claim construction. The district court said, and I quote, and this is at A. 1753 in the record, that so long as some syllabic elements are capable of being combined to form words, even if not all are, the invention still has an advantage over a system that relies exclusively on complete word databases. How do you square that with the district court's comments about anticipation? Your Honor, I don't... I think what the district court did is it was looking to whether or not the entire database had to be comprised of syllabic elements. In fact, that was its ultimate finding, that that's what the patent required. And I would suggest the claimed method is performed irrespective of whether there are other entries in the database. This is an enhancement to the prior art. This has expanded word capability recognition over the prior art. As such, a system could practice the prior art and also practice the claimed method. And the practicing of the prior art is not infringement. We've never contended that. But whenever the claimed method is practiced, even to a slight degree, there's infringement. Okay, I think, Mr. Ragulan, you're into your rebuttal time. We'll give you two minutes. Thank you, Your Honor. All right. Thank you. Mr. Verhoeven, am I getting that one right? You are, Your Honor. Okay. Good morning, Your Honors. May it please the Court. From a defendant's or appellee's perspective here, the ultimate resolution on this appeal is a simple one. The plain language of the matching step in Claim 10 is not ambiguous. It says, quote, matching set binary code with one or more preprogrammed codes, each preprogrammed code being representative of the syllabic element. Let me ask you this. If you had a database with one multisyllable word that wasn't a syllabic element and 1,500 syllabic elements, do you have infringement or not? Under the literal language of this claim, you have no infringement. So one word would save it if you looked at just the database argument? Under literal infringement, yes, Your Honor. And the reason is because... Wouldn't that be reading as each and every? I mean, what about their argument that it only infringes when you match against a syllabic element, but it doesn't exclude matches against a word? They just don't have the right to collect damages when it matches against a word. Well, if I may address, the way I read this phrase, you're matching, you're matching two things. On the one hand, you're matching a binary code. And then on the other hand, you're matching, what are you matching? One or more preprogrammed codes. That's when you get the claim. In order for them to collect damages for infringement, they would have to prove this matching function of a binary code with a syllabic element. The question is, where they're not claiming infringement, but there's a mixture. Sometimes it matches against a syllabic element and they claim damages for infringement. And sometimes it matches against a multi-syllable word or a one-syllable word not capable of being combined. And then they say, no infringement. Why can't they have it that way? When the method infringes, they collect damages. When the method doesn't infringe, they don't collect damages. It's not the easiest claim in the world to understand. That's why I said to him, it took me longer than it normally takes me to understand things to understand this one. But that's the question. If I can explain how I read it, all method claims have some structure that otherwise they'd be indefinite. So they have a keyboard, you have binary code, you have this other thing you're matching with. And what is that thing that was added in response to the Rabiner, to get over Rabiner? It was one or more preprogrammed codes. No, it was combinability gets you over Rabiner. I believe the one or more was added by the examiner for definite purposes, as was the each. And so the examiner says, you've got a binary code here, and you're matching it with this other thing. What is this other thing? It's one or more preprogrammed codes. And you have the right to claim infringement when that happens. The question is, what do you do if a process does two things? It does something that infringes and it does something that doesn't infringe. Where do they give up their right to collect damages for the parts that infringe when something else happens in the same process that doesn't infringe? I understand the difficulty, Your Honor. If I could just finish the thought of how I interpret this. Fine, then I would appreciate an answer to the question. Because I think the answer is, what are you matching against? And what you're matching against is one or more preprogrammed codes. You can call that, it could be one, you could have a database of one code. You could, as ITAP has, a database of over 40,000 codes. Okay? Those are the preprogrammed codes you're matching against. You can call it a vocabulary, you can call it a set of one or more, you can call it a group, you can call it a database, whatever you call it, it's this one or more thing. And in the accused device, it's over 40,000 entries. You still haven't answered my question. I'm sorry, Your Honor. Okay, I'm waiting. So the way I read this is, you're matching a binary code against this set, this group. And then the claim language says, each of those preprogrammed codes in that set or group has to be representative of a syllabic element. What you're saying is that this method, in order to be performed, requires that the database be composed of syllabic elements, not that it include multi-syllable whole words, right? That's correct, Your Honor. And that, I believe, is the plain reading of the language, especially because the examiner, to make this claim definite, specifically added, originally with the amendment, just said you're matching against a preprogrammed code. And the examiner, when he made changes that were agreed upon to make it definite, made that a set of one or more preprogrammed codes. That's a vocabulary, a group, a set, whatever you want to call it, and then clarified that each of the members of that group has to be a syllabic element. What about the specification? Excuse me, I don't mean to interrupt you, Counselor. The specification that says the binary code is matched with a preprogrammed vocabulary code representative of an alphabetic character string, such as a word or syllabic element. How do you deal with that in your argument? That one word that's not a syllabic element means no infringement on the whole thing. How do you get that with that specification? Well, initially, Your Honor, I think that the quote does not... We all agree, I think, that some words are syllabic elements. So... But you wouldn't say word or syllabic element if you were talking about words that are also syllabic elements, would you? The specification in Column 5 does talk about that a few syllabic elements are words. But another point I'd like to make in answer to your question is if you had a look at the prosecution history where initially the claim language matched against alphabetic character strings, Your Honor... And then it was changed, and they... I did read the prosecution history, and they substituted syllabic element, but in the final patent, the specification I just read is still in there. That's true, Your Honor, that's not uncommon. The specification... Are you saying it's an error? Oh, no, Your Honor. Oftentimes, when someone files an application, they don't change their specification even if they are required to limit their claims. Right. And so you may have discussion in a specification that the patentee was forced to surrender as part of the invention through the amendment process. So if you look at the amendment process here, Your Honor, what you see is the initial application had a... It was initial claim 13, and it matched against alphabetic character strings, and then it had two dependent claims that said the claim as in 13 wherein you're matching against syllabic elements, and then there was another one that said the claim as in 13 wherein you're matching against words. Then there was the rejection based on the Rubiner. I believe that's how it's pronounced, the Rubiner reference. And the amendment made before the exam or interview was to delete the dependent claims and to amend the independent claims so you're matching it against syllabic elements. Then they had an interview, and the examiner took that one step further, Your Honor, and made it very clear by changing it from matching against a syllabic preprogrammed code, he made it you're matching it against a set, one or more preprogrammed codes, and each of those items in that set has to be a syllabic element. And if I could just also... Well, one word that's not a syllabic element destroys the whole set in terms of infringement. You can infringe 99.9% of the time, but if you have one word in your set that's ambidextrous, I'm just making up a word that I think doesn't have... I don't even know if it has syllabic elements, so let's assume for purposes of this argument that it doesn't. You include ambidextrous in your set, then you have no infringement on the whole set? That's what the literal language of the claim says, Your Honor. No literal infringement. No literal infringement. And by the way, there's no argument on doctrine of equivalence on this appeal. No, but I think what Judge Prost is suggesting to you is that the mere addition of one word might take you out of literal infringement, but it wouldn't take you out of infringement on the doctrine of equivalence because if you had a functioning database without multi-syllable whole words in it, that the addition of a few or one whole words might not prevent infringement under the doctrine of equivalence. And with the stress of the word might, I agree with that, Your Honor, but my only point is that has not been briefed or argued. The doctrine of equivalence has not been briefed or argued. Well, it may not be an issue in this case because, I don't know, but it may be that the accused device doesn't... I mean, Judge Hochberg was offering an insightful hypothetical. I agree, Your Honor, very much so. But what we're trying to do is to make sense out of the construction. And I think what maybe all three of us have been saying to you is that it really doesn't make sense to say that by the mere addition of a single multi-syllable word you can avoid infringement. And perhaps the answer to that is you could avoid literal infringement, but maybe you can't avoid infringement by the doctrine of equivalence merely by adding that one word to the database. And I agree with the panel. I agree with the panel. The reason that's not being argued on appeal is because... We understand that. ...the accused technology here is over 40,000 entries... This is, we're not dealing with the one word. Exactly. One other thing I'd like to quickly talk about is the prosecution history that Mr. Bragilow referenced. In our view, the prosecution history distinctions that were made only support the non-infringement ruling below. If you look at the language, and I hope that Your Honor still have that cite, but the statement was, we're talking about Rabbit Rabiner describes a database comprising a limited vocabulary of complete words. In contrast, the present invention says that employs a database of syllabic elements. So the notion that we're not talking about a database, we're not talking about a set, we're not talking about a vocabulary, is belied by the way that this is even being distinguished. That's how they're looking at it, is what is this database of? So I think that is insightful. And then there's language further down that Mr. Bragilow read about how the Rabiner prior art in that database, there was a one-to-one correspondence between the vocabulary of the database and the output. Your Honors, it's undisputed that in the ITAP software issued in this case, ITAP version 5, there is a one-to-one correspondence between the vocabulary and the output. So that's not a central issue, that's not the main issue that the district court focused on, but I raise this just to show you how dissimilar the accused product here is from what in the patent, in the prosecution history, they are describing as their invention. If I may briefly address, Mr. Bragilow argued, and it's in the briefs, that there's a dispute of fact here. We strongly disagree with that, Your Honors. Several times in the briefing papers, the appellant has argued that the district court found as a factual matter that the ITAP software was comprised only of a vocabulary of complete words. And then the appellants go on to say, Your Honors, there's a dispute of fact about that because some of the entries in the ITAP vocabulary are not complete words, and so the district court made an erroneous factual finding. Interestingly, Your Honors, there's no cites to the court's order when that state proposition is made. And the reason for that is because the district court did not so find. The district court found that the ITAP software had included a complete word database, but the district court also found that there were certain entries in the ITAP that would be considered syllabic elements under the court's definition. And the whole ruling of the district court was that because most of the time, when you're doing the matching in ITAP, if you call it matching, most of the time you're comparing against something that under the court's construction is not a syllabic element, and the plain language requires that each of the items, each of these preprogrammed codes be syllabic elements. There's no dispute of fact about that holding. So there really is no dispute of fact here, and it really is misdirection for the appellant to be arguing that the district court made a factual finding and said, correct, he simply did not. If I might turn to, briefly, to the claim construction issues that we have briefed, Your Honors. The ones that aren't involved in the judgment? The claim construction of syllabic element is what I was intending to address. Oh, I see, okay. I'm sorry, Your Honor? No, never mind. Go ahead. Okay. Below, we had argued that this phrase, syllabic element, was indefinite. We argued it for two reasons. First, it's undisputed in the record that it has no meaning to a person of an ordinary skill in the art. It was a claim term. That's not disputed. And secondly, we have argued that if you look at the intrinsic evidence, the specification of the prosecution history, you will see... If you go with the district court's construction, we do not take the position that it's indefinite, Your Honor. And we argued for, in the alternative below, for the district court's construction, Your Honor. And we argued primarily that it was indefinite, but the only way to construe it in a manner that is definite is to construe it in the way the court did. And we agree that one of ordinary skill in the art would understand what is and what is out of a database that has to be comprised of syllabic elements if you construe it as a single syllable. A person of ordinary skill in the art knows what that is. But if you get beyond that, they do not. Okay. Thank you, Mr. Verhoeven. Thank you, Your Honor. Okay, you have two minutes, Mr. Verhoeven. Thank you, Your Honor. First of all, I want to dispel the court of any notion that there was not a factual issue in the record. The district court expressly found that the accused devices used complete word databases. By saying complete word databases, that was a database of complete words. That's consistent with the district court's prior claim construction finding where he said that what was distinguished was a vocabulary of exclusively complete words. That was distinguished in the prosecution history. So the district court never even addressed, and that's our complaint here, the district court didn't even attempt to address all the evidence that was in the record that showed that the claimed method was actually performed by these devices. This case actually is very similar to a case that Your Honor, Judge Dyke joined in the opinion in Invitrogen where the court reversed the same district judge and it found that the district judge had gone too far and had extended the limitations of the patent claims beyond the claims themselves. When the method is actually performed in this case, there's infringement. Nothing in the claim language, and that's where you start with the language of the claim, nothing in the language of the claim says that the method must be performed on every single entry that's stored in the database. What about your adversary's use of the word set in the prosecution history? Your Honor, that's Mr. Verhoeven's term, set. You're saying set doesn't appear? It doesn't appear in the prosecution history, no, Your Honor. In fact, Rabiner is a database. That's why the reference to database was used. In contrast, if you look at the language of Claim 10, it doesn't even require a database. All it requires is the codes that are matched be programmed into the system. They can be in the form of a tree structure. They can be in a database. That's certainly allowed, but it's not required in any respect. Okay, Mr. Bregolin, thank you. Before counsel go away, there's a real problem here with the briefs and the labeling of things is confidential. And I'll just give you an example here from page 16 of the red brief. It says it's undisputed that ITAP's vocabulary does not fit the examiner's view of syllabic element. Well, there are all sorts of things that are marked confidential which are contentions by the parties, and that doesn't seem appropriate. So perhaps the counsel from the two sides could get together and scrub these briefs so that we have limited the confidential designation to the things that are really confidential and file new public briefs that include the material that's not confidential. Certainly, Your Honor. And I will state that our designation, that is the Board of Regents of the University of Texas, designations were based solely upon the designation of certain documents that were produced in litigation as confidential. Well, that doesn't seem to explain what's being done here because it's talking about party contentions. In any get-together, please try to keep it to a minimum so that we don't have briefs here which are marked the way these are, okay? From the perspective of appellant, we don't believe that there's anything that necessarily requires a confidential designation. Well, that would be good. Then you could file the confidential briefs as non-confidential briefs, and the whole problem would be solved. Thank you, Your Honor.